Chief Justice Robertson
delivered the Opinion of the Court;
Judge Marshall did not sit in this case.
Edmonson having, in a suit in chancery against the heirs of William Marshall, for the specific execution of a covenant by their ancestor, to convey five thousand acres of land, obtained a decree for five thousand five hundred and fifty-nine acres—a commissioner, who had been appointed for that purpose, made him a deed, in 1817, for the quantity decreed.
The Gen’l Court Iras jurisdiction of a joint action (by a non resi, dent against divers deft?s (citizens,) for a tract of land of the value of $500 or more - no matter how the deft’s hold — whether jointly or severally, or whether any one holds $500 worth or not.
*96 Afterwards, in 1826, the heirs, who had been non-residents and infants, filed a bill of review, for correcting the decree, for errors on its face, so as to reduce the quantity of land conveyed to live thousand acres, conformably with their father’s obligation, and finally obtained a decree to that effect, purporting to annul the first decree for the supernumary five hundred and fifty-nine acres, designated by specified boundaries, and to revest the title thereto in themselves: and this last decree was affirmed by this court.
Edmonson having, in the mean time, sold and conveyed the greater portion of the five hundred and fifty-nine acres to sundry persons, the heirs of Marshall, ip January, 1833, brought an action of ejectment, in the General Court, against his vendees, who were in possession, and recovered a judgment of eviction against all of them, except one, who had. entered in 1796, under an adverse title.
The unsuccessful parties now seek the reversal of that judgment; and rely principally on three grounds:— .pint,, That the declaration does not exhibit a case of which the General Court had cognizance; second, that that court erred in giving and ip withholding instructions; pxxd,third, that the title,passed by the commissioner’s deed pnd by the conveyances from Edmonson to themselves, had never been divested by the decree, on the bill of review'; and that, therefore, the appellees, relying altogether on the title which had been thus convejmd away, had failed to establish a superior legal right.
The only instruction which was given for the appellees, was, in effect, that the decree on the bill of review had .divested Edmonson and his alienees of all title to the five hundred and fifty acres claimed under the original decree. Two of the instructions which were refused were directly opposed to that which had been given for the appellees; and the only other instruction, which was overruled, assumed the false position, that Edmonson’s possession, under Marshall’s covenant for a title, wag pd/erse to Marshall’s title.
The declaration describes the lessors as non-residents, and the record sufficiently shews that the defendants; *97 ■■now appellants, were citizens of this State; and, although it appears, that no one of the appellants claimed to hold land of as much value as five hundred dollars, it is admitted that the whole five hundred and fifty-nine acres sued for, exceed that amount in value. Now, as it was proper to bring a joint suit against all the occupants, and as the land involved in' that suit was of sufficient value to give jurisdiction to the General Court, the amount in contest with each separate defendant cannot be material. And, were it material, the declaration and notice could not now be objected to, for not certainly shewing that the appellants were citizens of Kentucky, because, that fact appearing in the record, this court cannot decide that the General Court had not, or was not shewn to have, jurisdiction: for, after verdict on an issue of fact, it is well settled that there should be no reversal on the ground merely that the facts entitling the inferior court to jurisdiction are not disclosed by the declaration, provided they appear any where in the record. Massman vs. Higginson, 4. Dallas, 12; Montalet vs. Murry, 4. Crunch, 46; 5. Ib. 303; Lex'n. Man. co. vs. Dorr, 2. Littell, 257; Grant vs. Tams &c. 7. Monroe, 218.
If it appears by any part of the record, that the court has jurisdiction, no exception can be taken after verdict, though thp dec’n may not show it.
As between nortresidents fy citizens, consent in writing gives the Gen. Ct. jurisdiction of sums under $500;and, after verdict - no plea or objection to the jurisdiction appearing^ such consent wijj be presumed,
But this enquiry—so far as value is concerned—is not now material, because the appellants, by their conduct, as exhibited by the record, consented to the jurisdiction, and such consent is alone sufficient, according to former decisions, and to the statute of 1825, l. Hitat. Law. 523— to give jurisdiction. Although the statute requires the consent to be in writing, yet it has been decided that, after verdict, without any plea, or other objection, to the jurisdiction, such consent as would give jurisdiction will be presumed or is implied by the record. Fowler vs. Halbert, 3 Bibb, 384; Madison’s Heirs vs. Wallace's Exr. 2 J. J. Mar. 584. And, as the act of 1825, as to consent, applies to suits for land “between nop-residents and the citizens of this State,” it concludes the question of jurisdiction now in this case.
Wherefore, the first objection to the judgment must be now unavailable in this Court,
A purchaser at a sale made unc^r the judg’t or decree of a court of competent jurisdiction, will hold his purchase, not withstanding a sehseqoert reversal ofthejudg ment or decree But this principle, it seems, does not apply to conveyances made (without sale) by com’rs, in pursuance of decrees for specific execution of contracts, or the like.
A comp’t, upon a covenant for 5000 acres of land, obtains a decree and con veyance for 5559 Afterwards, upon a bill of review, for errors on the face of the decree, it is corrected, and the deft’s re-invested with the title to the over-plus—the 559 acres.' In the mean time, the comp’t had sold the overplus to bona fide purchasers—# there was no decree formally divesting them of the title, they were not parties to the suit: hut, held, that the convey anee under the decree and commissioner’s deed, is no higher or better than a conveyance of the same title, by the comp’t himself, according to covenant, without a decree, wouldhavebeen; and the title of his vendees, depending on his, failed when that was annulled; §• the def’ts in the decree, reinvested, may maintain ejectment to recover the land from those vendees. A sale made between the time of a conveyance under a final dedecree, and the filing of a bill of review: the purchasers deemed pendente lit$i purchasers.
*98 Tbe third and last objection to the judgment, presents father a new and interesting question. But it seems to us, that the argument in support of this objection, is more plausible than substantial.
It has been often decided, that á bona fide purchaser under a decree or judgment, may, if the court had jurisdiction, hold the thing so purchased notwithstanding a subsequent reversal of the judgment or decree for error or irregularity. But neither Edmonson, nor his vendees, can be protected by the principle of this judicial doctrines That principle is one of supposed public policy altogether. As those who may be expected to purchase at judicial sales cannot be presumed to know whether (the court having jurisdiction) the judgment or decree is erroneous and may be reversed, and as it is a matter of great, public concern, that persons disposed to buy property at such sales, should bid with confidence in the effectiveness of the sale, and should be protected by the law, whose interpreters and ministers invited them to buy—it has been deemed better, as a general rule, that such sales should not be frustrated, so far as the purchaser may be concerned, by a subsequent reversal of the judgment or decree; and that the person whose property was sold, rather than such a purchaser., should give it up. But none of this reasoning .applies to this case. Edmonson was no purchaser under the decree in his favor. The decree itself erroneously gave him that to which he was not entitled; and, the subsequent nullification of that decree necessarily divested him of all semblance of title derived Only from the decree. Nor do his vendees stand in the attitude of purchasers under a judgment or decree of court. They voluntarily bought of bim-tbat to which he had an ostensible judicial right; but they had bought it, not under the authority or at the instance of a court or any officer of the law, and certainly took 'it—as his title—on Ms responsibility, and subject to all the contingencies to which the title of a vendor is ever liable. They bought only his right. They bought it from Mm, and could not have acquired, thereby, a better or any other right than he had. His right was liable to defeasance; this they *99 .must have known, or should be presumed to have understood. His title has been defeated; and, therefore, theirs, which was only derivative and depended entirely on Ids', must also have failed at the same instant. After his right had been transferred to them, they stood precisely as he would have stood had he never conveyed his interest to them. And, of course, when the decree, which was the only foundation of his and their title, was annulled, no title remained in them. No re-conveyance was necessary, because nothing remained to be conveyed. The superstructure fell with the destruction of its foundation.
We are therefore of opinion, that the final decree, which was affirmed by this Court, had the effect of removing all intervening obstruction to the title of the appellees, and of reinvesting them with it, as it descended to them, and of reinstating them, as to the land affected by this last decree, perfectly and entirely.
And we are of the opinion, also, that the appellants should be considered as pendente lite purchasers, and that the setting aside of the decree, on which their title altogether depended, left them without any other documentor evidence of title than Edmonson’s conveyances to them, which were, of course, insufficient without any legal link connecting him, or his title, with the Commonwealth.
It appears, therefore, that there is no error in the judgment—as, according to the foregoing conclusions, the instruction which was given for the appellees, was. proper, and as, consequently, the conflicting instructions, as well as that respecting Edmonson’s possession, were properly overruled.
Wherefore, the judgment is affirmed.