# Debell *vs* Foxworthy's heirs.

CHANCERY.

*Case 57.*

APPEAL FROM THE FLEMING CIRCUIT.

*Purchaser pendente lite.   Bills of review.*

*January 27.*

JUDGE SIMPSON delivered the opinion of the Court.—CHIEF JUSTICE MARSHALL did not sit in this case.

WILLIAM MARSHALL, of Virginia, having executed his bond to James Edmonson, for 5,000 acres of land, containing a stipulation, in the event any of the land was lost by a better title, to refund at the rate of twenty shillings an acre; Edmonson brought a suit in equity on the bond, and in 1817 obtained a decree against the heirs of William Marshall, he having died, for the conveyance of 5,559 acres. The decree required, and the commissioner's deed executed in pursuance thereof, covenanted for the return of twenty shillings an acre, for the whole quantity conveyed, in the event of its loss by a better title.

*Case stated in the original bill and decree therein.*

In 1826, Marshall's heirs filed a bill of review to correct the errors apparent in the record, in decreeing the conveyance of 5,559 acres, instead of 5,000, the quantity demanded by the bond, and requiring a covenant of warranty co-extensive with the quantity decreed to be conveyed. Edmonson tendered an answer to this bill,

*Bill of review by Marshall's heirs and decree therein.*

alleging that the value of the land had been misrepre-
sented by Marshall at the time he sold to him, and that
to remove his objections arising out of this misrepresen-
tation, by an arrangement made between them, more
land was, by consent, decreed to be conveyed, than had
been purchased by the original contract.   The answer
was rejected, and a decree rendered annulling so much
of the first decree as directed a conveyance of the ex-
cess over five thousand acres, and ordering a re-convey-
ance of such excess to Marshall's heirs.   This last de-
cree was affirmed by this Court: (6 *J. J. Marshall*, 450.)

In the opinion then given, it was decided that in a bill
of review to correct errors apparent on the face of the
record, only questions of law arising on the record,
were presented; and that no new extraneous matter
existing at the time of the decree, was admissible.   That
if any thing had occurred since the decree was pro-
nounced which would bar a review, such as a release,
or other matters of a similar character, they should be
presented and relied upon by plea.

After the first decree was rendered in favor of Edmon-
son, and before the filing of the bill of review to cor-
rect that decree by Marshall's heirs, Edmonson sold and
conveyed to William Foxworthy, one hundred acres of
the land decreed to him.   This one hundred acres was
included in the excess decreed on the bill of review to
be re-conveyed to Marshall's heirs.

Marshall's heirs afterwards brought an action of
ejectment against Foxworty and the other tenants in
possession of the 559 acres, the excess over the 5,000
acres, and recovered a judgment against them for the
land.   The persons in possession brought the case to
this Court, and it was here decided that Foxworthy's
title was derivative, and that he acquired no other or
better title than Edmonson had when he sold to him.
That he took it subject to all the contingencies to which
it was subject in the hands of Edmonson.   The title of
the latter was defeasible and Foxworthy was presumed
to have known it, and being a purchaser *pendente lite*,
was as much bound as Edmonson by the proceed-

DEBELL
*vs*
FOXWORTHY'S
HEIRS.

Ejectment by
Marshall's heirs
and the decree
on them.

DEBELL
vs
FOXWORTHY'S
HEIRS.

The case now
before the court.

ings under the bill of review. The judgment of the Court below was, consequently, affirmed : (4 *Dana*, 95.)

Foxworthy having died, this suit in equity was brought by his heirs. They attempt to show an equity in Edmonson, to the land sold and conveyed by him to their ancestor, as part of the 5,000 acres to which he was entitled from Marshall. They insist that Edmonson had a right in equity, to have had this land assigned to him, as part of the 5,000 acres purchased by him from Marshall; and as their ancestor was a purchaser from Edmonson before the bill of review was filed by Marshall's heirs, and was not made a party to it, that he was not bound by the proceedings under it, and that they have a right still to assert this equity. Their right to do so in this suit, is the question we have to determine.

It has been already decided in the case referred to in 4 *Dana*, 95, that Foxworthy was a purchaser *pendente lite*, and bound by the decree subsequently rendered on the bill of review.

It is, however, now contended, that a final decree having been rendered in the original suit, at the time he made his purchase, and the bill of review having been subsequently brought, that there was no suit pending at the time he acquired his title, and that therefore, he cannot, with any propriety, be regarded as a purchaser *pendente lite*.

A purchase after
a final decree, &
before a writ of
error prosecu-
ted, purchases
subject to the
final decree,
which may be
rendered in the
cause. (2 *Dana*,
406.)

A purchase made during an abatement of the suit, if afterwards revived and prosecuted to a decree without culpable negligence, or after a final disposition of the cause in the Court below, and before a writ of error is prosecuted, is subject to the final disposition of the cause, and the purchaser is considered as having purchased *pendente lite: Watson* vs *Wilson*, (2 *Dana*, 406,) We can see nothing more incongruous, in regarding Foxworthy as a purchaser *pendente lite*, than there is in so regarding the purchaser in the cases just mentioned. But it is immaterial whether he be treated as a purchaser *pendente lite*, or as a privy to the decree ; the consequences are the same, and the only difference is in name.

It is further contended on the part of Foxworthy's heirs, that their ancestor should have been made a party by Marshall's heirs, to the bill of review, and this not having been done, they are not precluded by the decree in that case, from asserting the equity which they now set up. In support of this principle, reference is made to *Mitford's Pleading*, page 90, and to *Story's Equity Pleading*, sec. 420, where it is said, in treating upon bills of review, that a "supplemental bill may likewise be added, if any event has happened which requires it, and particularly if any person not a party to the original suit, becomes interested in the subject, he must be made a party to the bill of review by way of supplement."

The principle thus asserted is correct when properly understood and with certain qualifications.

The voluntary alienation of property, pending a suit, by any party to it, does not affect the rights of the other party, and the purchaser need not be brought before the Court. And it will make no difference whether the purchaser be the claimant of a legal or an equitable interest, or whether he be the assignee of the complainants or defendants: (*Story's Equity Pleadings*, sec. 156, 351. *Mitford's Eq. Pleading*, 73.)

The same rule prevails where a vendee files a bill for a specific performance of a contract for the purchase of land against the vendor, and pending the suit, sells to one or more sub-purchasers. In such a case, the sub-purchasers need not be made parties, but they will be bound by the decree in the suit: (*Same, sec.* 351, *a.*)

But there is a distinction between cases of voluntary alienation, and cases of involuntary alienation, or those made by operation of law. In the latter case, the alienee must be made a party; in the former, he may or not, at the election of the complainant: (*Same, sec.* 342;) *Sedgwick* vs *Cleaveland*, (7 *Paige*, 290.)

Now, if any person not a party to the original suit, becomes interested in the subject matter in controversy by operation of law or under a distinct claim not derived from one of the parties pending the litigation, he must be made a party to the bill of review, and is not

DEBELL
*vs*
FOXWORTHY'S
HEIRS.

The voluntary alienation of property during the pendency of a suit for it, does not affect the rights of the parties to the suit, whether it be an effort to transfer an equity or legal estate. (*Story's Eq.*, Sec. 156-351; *Mitford Eq. Plead.*, 73.)

The same rule prevails where suit is brought and pending by vendee vs vendor and there is a sale.

But if the title pass by operation of law or authority of law, the person who acquires the title must be a party. (7 *Paige*, 290; *Story's Eq.*, sec. 342.)

If one have claim to land in controversy derived from a distinct source, he should be party to a bill of review, or if the bill of review

DEBELL
vs
FOXWORTHY'S
HEIRS.

sets up new matter not before in issue. One having an interest even by voluntary alienation, should be made a party.

bound by the proceedings under it, unless he be made a party.

Or if the bill of review sets up and relies upon new matter, not in issue in the original suit, then all persons not parties to the original suit, who have become interested, although the interest may have been acquired by voluntary alienation, as in the case of a sale or assignment in the ordinary course of business, must be made parties to the bill of review. The reason is obvious. As to such new matter, there was no *lis pendens* at the time of the sale, and the purchaser has a right to be heard, for the protection of his interest, in opposition to the claim founded upon matter not previously presented or involved in the controversy. The rule, therefore, when correctly understood and properly limited, must be confined in its operation, to the cases mentioned.

Where a suit is decided in favor of or against trustees, and other trustees are appointed, they are necessary parties to a bill of review.— (*Story's Equity Plead., sec.* 350; *Hardr.,* 80–93.)

That this is the true extent of the rule, is conclusively manifested by the case referred to in support of it. Mitford refers to the case of *Sands* vs *Thorowgood,* (*Hardr.,* 104.) That was a suit brought by trustees, who obtained a decree for a certain sum of money against Sands, the defendant. After the decree, the trustees were superseded, and others legally appointed, and the money decreed was paid to the latter. Sands subsequently filed a bill of review, and was required to make the last named trustees parties to it. They came in by operation of law. They were not voluntary assignees. They represented the trust fund, and could not be regarded as holding under the other trustees. Where a suit is pending in favor of or against trustees, who are removed, and new trustees appointed, the latter must be made parties: (*Story's Equity Pleading, sec.* 350;) *Attorney General* vs *Foster,* (2 *Hare's Rep.* 80–93.) Story, in laying down the rule, adopts the language used by Mitford, to whom he refers in suport of it. But we have not been able to find any case which sanctions the rule in the broad sense contended for, which would make it apply to cases of voluntary alienation, and require such an alienee to be made a party to the bill of review by way of supplement.

The rule then properly understood, only requires that a person not a party to the original suit, who becomes interested in the subject after the decree, shall be made a party to a bill of review, if such person would have been a necessary party during the pendency of the suit before the decree was pronounced, had the interest been acquired by him during that time. And that all persons interested in the subject are necessary parties to a bill of review, not filed merely for the purpose of correcting errors apparent on the face of the record, and to have such a decree rendered as should have been rendered in the first instance upon the record as it stands, but setting up and alleging new matter not previously in issue for the purpose of effecting a change in the decree.

If Foxworthy had been a necessary party to the bill of review, not having been made a party, he would not have been bound by the proceedings under it, and the decision in (4 *Dana*, 97,) could not be sustained on principle. But being a voluntary purchaser during the existence of the litigation, he stood in the attitude of a purchaser *pendente lite*, liable to be affected by the final result of the suit, in the same manner that his vendor would be. So far as a voluntary purchaser is concerned, the litigation is regarded as still continuing, notwithstanding the final decree in the Court of original jurisdiction, where a writ of error is subsequently prosecuted, or where a bill of review is filed to correct errors apparent in the record, and he is concluded by the decree that may be finally rendered, founded merely on the same matter originally in issue between the parties.

In the case of *Clary's heirs* vs *Marshall*, (5 *B. Monroe*, 266,) the doctrine laid down in the case in (4 *Dana*, 97,) was recognized as correct, and it was admitted by the Court, that a sale made by Edmonson after he obtained the decree in the original suit, was inoperative against Marshall's heirs, so far as it passed the legal title, or originated and passed a new equity, being made *pendente lite*, and subject to the reversal of the decree upon the bill of review. Clary's heirs, however, claiming an equity which originated before the commence-

Debell
vs
Foxworthy's
Heirs.

ment of the litigation between Edmonson and Mar-
shall's heirs were considered not bound or affected by
that litigation.

Upon a bill of re-
view for errors
apparent in the
record, no ex-
traneous matter
can be relied on
for a change of
the decree. (6 J.
J. Mar.

If the doctrine in the case of *Edmonson* vs *Marshall's*
*heirs*, (6 *J. J. Marshall, supra,*) is correct, that in a bill
of review for errors apparent in the record, no extraneous
matter can be relied on in defence, which had an exis-
tence when the decree sought to be reviewed was render-
ed, then the equity now relied upon by Foxworthy's heirs
would have been unavailing, even had their ancestor
been made a party to the bill of review. He most
clearly would have had no right to make any other de-
fence than Edmonson, his vendor, could have made.
The equity set up, is derived from Edmonson. If it
was not a good defence for him, it could not be a good
and valid one in favor of his vendee. The fact that the
bill of review prayed for a re-division, could make no
difference. The object of the bill of review, was to
correct the decree that had been rendered, and to have
such a decree rendered in favor of Edmonson as he had
manifested his right to in the record. He had made his
preparation, brought the suit to a hearing, and obtain-
ed a decree. This Court, in the case referred to, deci-
ded that he should abide by that preparation, and he
was not permitted to introduce any additional equity,
which he might have relied upon originally. To per-
mit the vendee, who became such, voluntarily after the
decree was rendered, to do that which his vendor could
not legally do, would be inconsistent with well-estab-
lished principles on this subject. The bill of review filed
by Marshall's heirs, was not upon the discovery of new
matter or new evidence, it relied upon nothing *dehors*
the record to impeach the decree, but only sought to
have the decree corrected, and such a decree rendered
in favor of Edmonson, as he was entitled to, according
to the equity manifested by him in the record. It in ef-
fect sought nothing more than would have resulted from
a writ of error to the appellate Court, in which the de-
cree of the Court below would have been reversed, with
directions to render such a decree as should have been
rendered in the first instance. If in the latter case,

Foxworthy would have been bound by the decree as altered, in conformity with the mandate of the Appellate Court, no reason is perceived why he should not be equally bound, by a reversal and alteration, on a bill of review, not seeking a re-hearing, but a reversal of the decree for error apparent in the record, and such alteration of the decree, as was necessary for the correction of the error.

Our conclusion then is, that Foxworthy was not a necessary party to the bill of review, that he was bound by the decree rendered thereon, and that his heirs cannot assert their claim in opposition to that decree.

The determination of this point against Foxworthy's heirs, makes it unnecessary to consider the question whether Debell was a purchaser from Marshall's heirs for a valuable consideration, without notice, and thereby protected against the equity that Foxworthy's heirs attempt to assert.

The Circuit Court, therefore erred in rendering a decree in favor of Foxworthy's heirs against either Debell or Marshall's heirs.

Wherefore, the decree is reversed on the appeal taken by Debell, and also on the writ of error prosecuted by Marshall's heirs, and cause remanded, that a decree may be rendered, dismissing the complainant's bill with costs.

*McClung and Taylor* for appellant; *Hord* for appellees.