JUDGE WILLIAMS
delivered the opinion oe the court:
Leight, Barrett & Co., and other creditors of W. K. Hall, obtained a decree of the Hickman equity and criminal court, to subject certain real estate and town property, the title of which was in Mrs. Hall, to the payment of their debts, on May 25, 1860.
On the 23d of November following the commssioner’s report was confirmed, it having been filed two days previously.
*231 The report shows that the property, pursuant to said decree, was sold July 2, 1860, on credits of six and twelve' months, and that Josiah Brummal bought a portion and the plaintiffs the remainder; but afterwards the latter transferred their bid to M. M. Miller. The bonds for the purchase price were also returned to court with said report. The matter seems thus to have rested, when Hall and wife, on May 16, 1863, sued out an appeal from this court.
March 2, 1864, the commissioner again reported, in which it appears he had collected the second installment due by Brummal and the first by Miller, but had not collected Miller’s second installment, and that he had made a pro rata distribution of the money collected, as directe d in the decree.
March 2, 1864, plaintiffs filed an amended petition averring the non-residence of Miller, the non-payment of the second installment, and asking a sale of the property.
September 6, 1865, a commissioner was appointed to convey by deed to Brummal; and Walker, the first corn-missioner, being dead, another was appointed to collect from Miller.
September 9, 1865, the commissioner made a deed to Brummal.
February 27, 1866, commissioner directed to convey the lots purchased by.Miller to him, which he did on the same day.
The original case having been submitted to this court at a previous term, was reversed at its June term, 1866, by which it was determined that the property was not subject to pay the husband’s debts; that the wife was the bona fide owner of the property, as well as holder of the legal title, and it was therein directed that she be allowed an election to take the property or its proceeds.
*232 Brummal having died, his minor legatees, on the return of the cause, and Miller, came in by separate petitions ; ask to be made parties; resist Mrs. Hall’s right to have the property; set up that they are bona fide purchasers under judicial sale, without notice, and ask to be protected in their title. The court having adjudged the property to Mrs. Hall, they seek a reversal.
We will first dispose of the case of Brummal’s legatees, as they stand on a different and more favorable footing than Miller. As he bought of the plaintiffs who bid off the property, he must stand precisely as they would, had they not transferred their bid to him.
As was said in Tooly vs. Kane et al. (1 Smeeds & Marshall's Chy., Miss., Rep., 522), “ the theory of sales of this character is, that the court is itself the vendor, and the commissioner or master its mere agent in executing its will. The whole proceeding, from its incipient stage up, the final ratification of the reported sale, and the passing of the title to the vendee, and the money to the person entitled to it, is under the supervision and control of the court. The court will confirm or reject the reported sale, or suspend its completion, as the law and justice of the case may require. Even after the confirmation of a reported sale, if it appear that fraud, error, or mistake has intervened, injuriously affecting the interest of the parties concerned, the court will set aside the order of confirmation and rectify the evil, or order a resale Upon petition for that purpose.”
The report of the sale had been confirmed before Hall and wife appealed from the judgment of sale; but the deed had not been made, nor does it appear that the purchase money had been paid.
In the commissioner’s report of March 2d, 1864, some ten months after the appeal had been taken, he says since *233 his last report he has collected the second bond of Brummal, but whether before or since the appeal, he does not show by dates or otherwise; nor is it shown, except inferentially, that he ever collected the first bond; and the fact that Brummal did not move for a conveyance until more than eighteen months after the appeal, would inferentially authorize the conclusion that all the purchase money had not been then paid; but however this may be, he was not invested with the legal title. In other words, the court had not completed the sale when the appeal was prosecuted.
In the case of Gregnon’s lessee vs. Astor, 2 How. U. S. R., 343, the supreme court of the United States said: “ This court has adopted as a rule, applicable to all courts of record, that their decisions are conclusive” when “ it has a right to decide every question which occurs in a cause, and whether its decision be correct or otherwise, its judgment, until reversed, is binding on every other court.” # * * íc They aré rules of property on which the repose of the country depends. Titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral actions.”
And in Whiting vs. Bank of United States, 13 Peters, 6, on an appeal from this court, the supreme court of the United States, having decided that a decree of foreclosure and sale was final without awaiting the sale, they proceed to say : “ The defendants had a right of appeal from that decree, as final upon those merits, as soon as it was pronounced, in order to prevent an irreparable injury to themselves. For, if the sale had been completed under the decree, the title of the purchaser under the decree would not have been overthrown or invalidated even by a reversal of the decree.”
*234 In these cases the title of the purchasers under a decretal sale was collaterally attacked.
The cases of Clony et ux. vs. Marshall’s heirs (4 Dana, 99), Debell vs. Foxworthy (9 B. Mon., 228), Clark’s heirs vs. Farrow (10 B. Mon., 446), were for a specific execution, and adjudged that the purchaser from a party who had obtained his title by a decree of court, which had been reversed, was a pendente lite purchaser, and stood no better than his vendor, whose title was destroyed by the reversal; and these were approved in Earle, &c., vs. Couch (3 Met., 455). But none of these affect the question involved in this case; and the principles on which this case depends were only argumentatively alluded to in very general language.
A sale made and fully executed by a court of competent jurisdiction has been very generally upheld, upon both a public policy and as a rule of property, and such has been the tendency of our legislation.
Section 427, Civil Code, provides, that “ A conveyance made in pursuance of a sale ordered by the court, shall pass to the grantee the title of all parties to the action or proceeding.”
Section 428: “ A conveyance by a commissioner shall not pass any right until it has been examined and approved by the court,” &c. And by section 448: “ The titles of purchasers in good faith, to any property sold under an attachment or judgment, shall not be affected by the new trial permitted by section 445, except the title of property obtained by the plaintiff, and not bought of him in good faith by others.”
This general legislation, like the general rules previously adopted by courts, shows a strong inclination to uphold sales made by orders of courts when fully completed by conveyances'; but neither are universal *235 in their application or otherwise — both may have exceptions; and we think that one of the very strongest imaginable exceptions to this general rule, is when a married woman or infant’s real estate is decreed to be sold as the property of some one else, and before the sale is fully completed by a conveyance approved by the court, the collection and disbursement of the purchase price, an appeal to correct the error of the judgment of sale shall be prosecuted.
The appeal, it seems to us, is a notification to the court, who is in such cases regarded as the vendor, and of the parties and purchasers, that the owners insist the judgment is erroneous, and are taking the proper steps to correct the same; and if, notwithstanding such notification, the court shall persist in completing the sale, without any objections on the part of the purchasers, if not indeed by their approbation, and on the motion of the plaintiffs, we cannot sée that they should be regarded as Iona fide purchasers, without notice, under a judicial sale.
When the judgment of sale is reversed in such cases there is then no judgment of any kind against the owner whose property was erroneously adjudged to be sold. And as by the provisions of the Code nothing passes to the purchaser until the deed of conveyance is made by the commissioner and approved by the court, but the same remains still under the control of the chancellor, he should always refuse to complete the sale in this class of cases, when an appeal has been taken, until it is disposed of, else the court becomes the instrument of egregious wrong and injustice.
It is a well-settled doctrine that parties and their privies, attorneys, &c., are regarded as having notice of every error in the record, and are, consequently, *236 affected by a reversal of the judgment when purchasers, though one not a party who might purchase would not be. So far as Miller’s purchase is concerned, it was first made by the plaintiffs to the action, who, after the sale was over, transferred their bid to him; consequently, he took it subject to all the equities against them.
We have disposed of this case as though no right of election had been given to Mrs. Hall in the former opinion.
The court should, by rule, cause a restitution of the purchase money to the purchasers, and should cause, by proper order, a release of their title under the commissioner’s deed to Mrs. Hall, as further orders will have to be made.
Wherefore, the judgment is affirmed.