RYAN v. STAPLES.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1896.)

No. 701.

1. JUDGMENTS—WHEN VOID—REVERSIBLE ERROR—LIENS—SHARE IN PROCEEDS OF SALE.
   The fact that a decree for the sale of several pieces of property, to satisfy liens against them, permits a lien which only attached to one piece to share pro rata in the proceeds of all, does not render the decree void, but only reversible for error. 62 Fed. 635, affirmed.

2. FEDERAL COURTS—FOLLOWING STATE DECISIONS.
   A single decision of a state supreme court, applying principles of the common law to the solution of a question as to the validity of judgments, does not establish a rule of property which is binding upon a federal court, in a case where the rights of a party claiming property under such a judgment became vested before the decision was made.

3. JUDGMENT—REVERSAL—REDEMPTION OF PROPERTY.
   The reversal of a judgment under which property has been sold does not affect the rights of the holder of another judgment who redeemed the property, under sections 2547–2549, Mills' Ann. St. Colo., before the writ of error was sued out, and who was a stranger to the writ of error.

4. SAME—NOTICE OF SALE—DATE OF NEWSPAPER—IMPEACHING RECORD.
   Where a newspaper containing a notice of sale under a judgment was dated the day before such judgment was rendered, evidence to show that

.· the paper was not in fact published until the day succeeding its date does not tend to impeach the record in the case, and is admissible in a collateral proceeding.

5. EJECTMENT—PARTIES TO ACTIONS—EVIDENCE.
. In an action of ejectment, it is not error to reject testimony tending to show that the plaintiff has only the legal, and not the equitable, title to the property in dispute, as the legal title is sufficient to maintain the action.

6. SAME—TAX TITLES.
A tax title, offered in evidence, is properly rejected, when the notice of the tax sales contained no sufficient description of the property sold to render the sale valid.

In Error to the Circuit Court of the United·States for the District of Colorado.

This was a suit in ejectment to recover the possession of the following mining claims, located in Custer county, Colo., to wit, the Maine Lode and Mill Site, the Triangle Lode, the Spring Lode, the Frank Lode, the Georgia Lode and Lookout ·Mill Site, the Nemaha Lode, and the Lookout Lode. Both parties to the suit claimed title to the aforesaid property under the Bassick Mining Company, a corporation of New York, which was the owner thereof on and prior to June 1, 1885.

James.Staples, the defendant in error, who was the plaintiff below, deraigned his title to the property in controversy in the following manner: On June 1, 1885, W. D. Schoolfield commenced an action against the Bassick Mining Company et al., to foreclose a mechanic's lien upon the above-described property, for the sum of $6,283.82. On June 5, 1885, John H. Templeman filed an intervening petition in said case, pursuant to a statute of the state of Colorado permitting him to do so, claiming a mechanic's lien upon the same property for the sum of $797.50. On June 6, 1885, B. C. Adams and H. C. Holthoff also filed intervening petitions in said suit, claiming liens on all of said property, for the sums of $2,022.77 and $4,365.53, respectively. On June 8, 1885, John Jordi intervened in said suit, claiming a lien on all the property for the sum of $262.50, and on June 12, 1885, Thomas Armstrong filed an intervening petition, claiming a mechanic's lien on the Maine Lode only for the sum of $21,847.85. After due proceedings taken in said case, in which the various intervening petitions had been filed, which will be referred to hereafter as the "Schoolfield Suit," a final judgment was rendered in said suit, by default, on June 19, 1885, which established all of the aforesaid liens for about the amounts above stated, and directed a sale of the property in controversy for the satisfaction and payment of the various lien claims. The judgment in question awarded to Thomas Armstrong a lien against the Maine Lode only, according to the prayer of his intervening petition, but the order of sale contained in said judgment directed a sale of all the mining claims above mentioned, and further provided that the fund realized from such sale should be applied—First, to the payment of all the costs in the Schoolfield suit; and, second, "to the payment of°the several liens herein declared, and the judgment herein decreed, in full, if there shall be a sufficiency to pay the same, but, if there shall not be a sufficiency to pay the same, then payment on said judgments to be made pro rata." In accord-·ance with the aforesaid judgment the property in controversy was sold by the sheriff of Custer county, Colo., to Clapp Spooner, on July 11, 1885, for $37,599.85; but, before the execution of a deed to the purchaser, George H. White, who was the assignee of another judgment that had in the meantime been rendered against the Bassick Mining Company, redeemed from the sale to Clapp Spooner, as he was permitted to do by the laws of Colorado, by paying to the sheriff the sum of $39,532.05, that being the amount for which the property had been sold, with accrued interest thereon. After redeeming the ·property from the first sale, White directed the sheriff of Custer county to resell the property in controversy for the satisfaction of his demand, pursuant to the statute in that behalf enacted; but such second sale was enjoined for a time, and did not take place until May 13, 1886, when the property in controversy was again sold, and bid in by said George H. White for the

sum of $60,000, he receiving a certificate of sale. On May 14, 1886, James Staples, the plaintiff below, as assignee of another judgment against the Bassick Mining Company in favor of John T. Radcliff and William H. Radcliff, redeemed from the latter sale by paying to the sheriff the sum of $60,016.70, and thereupon caused the sheriff to readvertise and resell the property on June 21, 1887. At this latter sale Staples became the purchaser of the property in controversy for the sum of $66,635.15, and received a deed therefor under which he claims title.

This suit was originally brought against the New Bassick Mining Company, a corporation of the state of Colorado; but thereafter Dennis Ryan, the plaintiff in error, was permitted to become a party defendant, and to interpose a defense to the suit. Ryan deraigns title to the property in controversy as follows: On May 27, 1885, the Hendrie & Bolthoff Manufacturing Company commenced an action against the Bassick Mining Company for the sum of $6,925.71, and caused a writ of attachment to be levied on the mining claims above described. Judgment was rendered in that suit against the Bassick Mining Company on July 29, 1885, and by virtue of an execution issued thereon the property in controversy was sold to Dennis Ryan, the defendant below, on May 31, 1887. On account of that sale he appears to have received a certificate of purchase, executed by the sheriff of Custer county, Colo., on August 3. 1887, certifying that he would be entitled to a deed for the property on May 2, 1888. On or about May 21, 1886, a writ of error was sued out of the supreme court of the state of Colorado by the Bassick Mining Company, to reverse the judgment rendered in the Schoolfield case on June 19, 1885, in favor of the several lien claimants heretofore named. That judgment was eventually reversed by the supreme court of Colorado in an opinion filed on May 18, 1887 (Mining Co. v. Schoolfield, 10 Colo. 46, 14 Pac. 65); but, prior to such reversal, and on May 14, 1886, Staples, the defendant in error, as assignee of the judgment rendered in favor of John T. Radcliff and William H. Radcliff against the Bassick Mining Company, had redeemed, in the manner heretofore stated, from the sale theretofore made under the judgment in the Schoolfield case, and had caused a levy to be made on the property in controversy under an execution issued on the Radcliff judgment. Notwithstanding the reversal of the decree in the Schoolfield case, Staples caused a sale to be made under the last-mentioned execution, at which sale he became the purchaser of the property in controversy on June 21, 1887, as before stated.

The statute of the state of Colorado with reference to mechanic's lien suits, in pursuance of which the several lien claimants heretofore named intervened in the Schoolfield suit, and became parties thereto, is as follows:

"Sec. 2888. Actions Consolidated—Who may Defend—Pleadings—Intervention—Proceedings. Any number of persons claiming liens and not contesting the claims of each other may join as plaintiffs in the same action, and when separate actions are commenced the court may consolidate them upon motion of any party or parties in interest or upon its own motion. Upon such procedure for consolidation, one case shall be selected with which the other cases shall be incorporated, and all the parties to such other cases shall be made parties defendant in said case so selected. All persons having claims for liens, the statements of which shall have been filed as aforesaid, shall be made parties to the action. Those claiming liens or who fail or refuse to become parties plaintiff, or for any reason shall not have been made such parties, shall be made parties defendant. Any party claiming a lien not made a party to such action may, at any time before the trial of the action or before the final hearing of the case by the court, be allowed to intervene by motion, upon cause shown, and may be made a party defendant on the order of the court. The court shall fix the time for such intervener to plead or otherwise proceed. The pleadings or other proceedings of such intervener thus made a party shall be the same as though he had been an original party. Any such defendant, by way of answer, shall set forth by cross-complaint his claim and lien. Likewise such defendant may set forth in said answer defensive matter to any claim or lien of any plaintiff or co-defendant, or otherwise deny such claim or lien. Any such defendant may, by his answer, set up that there are other persons who claim liens upon the property described, naming them, and asking that they be summoned to appear and maintain

the same. Thereupon an amended summons shall issue in like form as the original, but so modified as to make parties defendant of the persons so named in the answer in addition to the other defendants. Said last named summons shall be served upon such new defendants as in other cases. The owner of the property to which such lien shall have attached shall be made party to the action."

"Sec. 2891. Court may Hear or Refer—How Judgment Rendered. The court may proceed to hear and determine said liens and claims, or may refer the same to a referee to ascertain and report upon said liens and claims, and the amounts justly due thereon. Judgments shall be rendered according to the rights of the parties. The various rights of all the lien·claimants, and other parties in any such action, shall be determined and incorporated in one judgment or decree. Each party who shall establish his claim under this act shall have a judgment against the party personally liable to him for the full amount of his claim so established, and shall have a lien established and determined in said decree upon the property to which his lien shall have attached to the extent hereinbefore stated." 2 Mills' Ann. St. Colo. pp. 1623, 1624, 1626.

The statute of the state of Colorado concerning the redemption of lands sold under execution, so far as the same is applicable to the present case, is as follows:

"Sec. 2548. After the expiration of six months, and at any time before the expiration of nine months from the sale of any lands or tenements under the provisions of the preceding sections hereof, it shall be lawful for any judgment creditor to redeem the same in the manner following: Such judgment creditor shall sue out an execution upon his judgment, and place the same in the hands of the proper officer to execute the same, and thereupon said officer shall endorse upon the back of said execution a levy upon the land or tenements which said judgment creditor may wish to redeem; and said judgment creditor shall pay to said officer in whose hands he shall have placed his execution, as aforesaid, the amount of money for which said premises shall have been sold, with ten per cent. per annum interest thereon from the date of such sale, for the use of the purchaser thereof, his executors, administrators or assigns, upon payment of which said officer shall file in the recorder's office of the county in which said lands are situated, a certificate of the redemption thereof by said judgment creditor, under such execution, and shall advertise and offer the same for sale, under and by virtue of said execution, in the same manner that other lands are required to be advertised and exposed to sale on execution in other cases.

"Sec. 2549. Any judgment creditor, having so redeemed such lands, shall be considered as having bid at such sale the amount of said redemption money, so paid by him, and interest thereon from the date of such redemption to the day of sale; and if no bid greater than said amount shall be offered, the lands shall be struck off and sold to such judgment creditor or creditors, and a deed thereof shall forthwith be executed by such officer to such creditor or creditors, and no other redemption shall be allowed. * * *" 2 Mills' Ann. St. Colo. pp. 1477, 1479.

There was a verdict and judgment below in favor of the plaintiff, to reverse which the defendant below has sued out a writ of error.

C. S. Thomas and Lawrence P. Boyle (Charles Hartzell, W. H. Bryant, Harry H. Lee, and C. Stewart Beattie, with them on brief), for plaintiff in error.

Hugh Butler, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is conceded that the title acquired by James Staples, the defendant below, as a purchaser under the judgment in favor of John T. Radcliff and William H. Radcliff, by virtue of his having redeemed

from the sale made in the suit to foreclose the various mechanics' liens, is superior to the title acquired by Dennis Ryan, the plaintiff below, under the judgment in the attachment suit, provided the judgment in the mechanic's lien suit was not utterly void, when rendered, for want of jurisdiction, and provided, further, that the sale under the Radcliff judgment was not inoperative to transfer the title to the property in controversy, by reason of the fact that the judgment in the lien suit had been reversed before the sale to Staples was made. These, then, are the important questions which deserve attention: First. Was the judgment in the Schoolfield suit void, or simply erroneous, and voidable on appeal? Second. If it was simply erroneous, and not void, did the reversal thereof on appeal, prior to the sale under the execution on the judgment in favor of the Radcliffs, have the effect of preventing the latter sale from transferring a title to the property in controversy?

Referring to the first of these questions, it may be said that the court by which the judgment in controversy was rendered was properly constituted, and was also a court of general jurisdiction; the case in which the judgment was rendered was one which it was expressly empowered to hear and determine; it had acquired full jurisdiction of the parties to the suit by the issuance and service of proper process; and the several mining claims described in the judgment were all located within the territorial jurisdiction of the court, to wit, in Custer county, Colo., and were mentioned in the pleadings in the case as the property to which the several lien claims therein sought to be enforced had attached. Moreover, a statute of the state of Colorado clearly authorized the several lien claimants to intervene in the lien suit which was first commenced by W. D. Schoolfield, and further authorized the court, after such interventions had been filed, to treat the case as a single suit or proceeding, and to dispose of all the issues by a single judgment or decree. It also appears that the court by which the judgment in question was rendered had an undoubted power, in the particular case, to decree a sale of all the property in controversy, for the reason that, with one exception, the several liens extended to and embraced the entire property. In short, there was no defect or irregularity in any of the proceedings taken or orders made in the Schoolfield case, so far as we can see, except the circumstance that one provision of the judgment permitted Thomas Armstrong, whose lien only attached to the Maine Lode and Mill Site, to participate in the proceeds realized from the sale of that and the other claims. This provision of the judgment, assuming it to have been erroneous, was not such an error as rendered the judgment a nullity; but, at most, it only rendered it reversible, for error, by an appellate tribunal. The court by which the judgment in question was rendered had jurisdiction of the parties to the suit and of the subject-matter. It also had jurisdiction of the particular question which it assumed to decide, wherein the alleged error was committed; for, beyond all controversy, having ordered a sale of all the mining claims, as it was entitled to do, it had the right to determine how the proceeds of that sale should be apportioned among

the several lien claimants. It possessed the same power to decide that question which it had to decide any other question that arose during the progress of the case. It may have erred in its decision of the question, but, having the power to determine it, it cannot be said that the error so committed rendered the judgment inoperative and void. Such a view, in our opinion, would be at variance with the uniform current and weight of authority. Voorhees v. Bank, 10 Pet. 449, 474; Grignon's Lessee v. Astor, 2 How. 341; McNitt v. Turner, 16 Wall. 352, 366; Comstock v. Crawford, 2 Wall. 396; Mohr v. Manierre, 101 U. S. 418; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369; Foltz v. Railway Co., 19 U. S. App. 576, 581, 8 C. C. A. 635, and 60 Fed. 316, and cases there cited; Black, Judgm. § 215.

It is urged, however, that the supreme court of Colorado, in the case of Mining Co. v. Schoolfield, 10 Colo. 46, 14 Pac. 65, has declared the judgment in the Schoolfield case to be utterly void, because of the provision, therein found, permitting Thomas Armstrong to share in the proceeds of the sale of the six mining claims to which his lien did not extend or attach, and that, whether such decision was right or wrong, it should be followed by this court, because the decision in question construes local laws, and at the same time establishes a rule of property which is binding on the federal courts. We have felt constrained to overrule this contention of counsel for the following reasons:

In the first place, it is apparent that it was not necessary to decide, in the case of Mining Co. v. Schoolfield, whether the judgment appealed from was void, even though it be conceded that the opinion in that case did, in effect, declare it to be void. The case involved a consideration of the question whether the record disclosed such an error in the proceedings of the trial court as warranted a reversal of its judgment. The relief prayed for by the Bassick Mining Company was a reversal of the judgment. If the judgment was simply erroneous, it was entitled to have the same vacated and annulled; and it could lay claim to no greater measure of relief because of the fact that the judgment appealed from was a nullity. It would seem, therefore, if we place such a construction upon the decision in that case as we are asked to place, that the decision went beyond the necessities of the occasion, and embraced a ruling upon a point not necessarily involved in that suit, in the decision of which other parties than the Bassick Mining Company, who were not then before the court, were vitally interested. In the case at bar, the judgment in the Schoolfield case is assailed collaterally in a suit between litigants who were neither parties to the suit in the state court, nor in privity with the parties to that suit when it was before the supreme court of Colorado, in so far as the decision dealt with the question whether the judgment appealed from was an absolute nullity. The rights of third persons are now at stake, who became purchasers under the Schoolfield judgment before a writ of error had been sued out to reverse it; who were not made parties to the writ of error, and who for that reason had no opportunity to be heard in the state court. The pre-

cise question now to be decided, which was not a necessary question in the case of Mining Co. v. Schoolfield, is whether the Schoolfield judgment was void in such sense that it may be assailed collaterally, or to such extent that no title could be acquired thereunder. It results, from these considerations, that if we interpret the decision of the supreme court of Colorado as we are asked to interpret it, and further hold that that decision is binding on the federal courts, we practically deprive the plaintiff below of his day in court; that is to say, of his right to be heard upon the question whether the judgment under which he claims title is utterly void or merely voidable.

In the second place, if the question whether the Schoolfield judgment was void, or was simply erroneous, was properly before the supreme court of Colorado for determination in the case of Mining Co. v. Schoolfield, we would be unable to concede, even in that event, that the decision in that case established a rule of property which is binding upon this court in the case at bar, for the obvious reason that the decision was not promulgated until after James Staples, the plaintiff below, had advanced something over $60,-000 to redeem the property in controversy from the sale made under the Schoolfield judgment. We admit the general proposition that when, by a course of decision in the highest court of a state, a rule has become established governing the descent, transfer, or sale of property, or affecting the title and possession thereof, a litigant in the federal courts cannot invoke the application of a different rule of law than that which has been thus established, with reference to transactions that took place within such state. Bucher v. Railroad Co., 125 U. S. 555, 583, 8 Sup. Ct. 974, 978; Burgess v. Seligman, 107 U. S. 20, 33, 2 Sup. Ct. 10, 21; St. John v. Chew, 12 Wheat. 153, 168; McKeen v. De Lancy's Lessee, 5 Cranch, 32. But it would be a perversion of this wholesome doctrine to hold that a plaintiff suing in a federal court is not entitled to the independent judgment of that tribunal upon a question like the one now in hand, because of a single decision by the courts of the state, which was not promulgated until after the plaintiff's rights had attached and had become vested. Even in a case such as is last supposed, the federal courts, as was said, in substance, in Burgess v. Seligman, supra, for the purpose of securing uniformity of decision, will lean towards an agreement with the state courts when the question at issue seems balanced with doubt; but in such cases they cannot refrain from expressing an independent judgment.

We are, furthermore, of opinion that the decision in Mining Co. v. Schoolfield cannot be regarded as a decision construing a local statute, in such sense that it is binding upon this court. The question whether a judgment is void, or simply erroneous, is one which depends for its determination upon the general principles of the common law, and upon a consideration of all the authorities, excepting in those cases where the decision turns upon the construction of local statutes, which either define and limit the jurisdiction of the court by which the judgment was rendered, or prescribe the manner in which jurisdiction over the parties or the subject-matter

shall be acquired. In the case above referred to, the conclusion which seems to have been reached by the supreme court of Colorado, that the judgment in the Schoolfield suit was void, was based mainly, if not entirely, on a consideration of the principles of the common law applicable to its determination, as they had been stated and applied by the courts of other states. So far as we are able to discern, the supreme court of Colorado did not place, or attempt to place, a definite construction upon any statute of the state, and, in view of such construction, deduce the conclusion that the judgment in question was void; but it drew that inference from the manner in which certain rules of the common law had been applied by other courts in somewhat analogous cases. We think, therefore, that the question at issue is one of general law, concerning which this court is bound to express an independent opinion, and, as above stated, we conclude that the judgment in the Schoolfield case was not void, but, at most, was only erroneous. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, and cases there cited.

We have next to consider the second question above stated, whether the plaintiff below failed to acquire a good title to the property in controversy, because the judgment in the Schoolfield case had been reversed some days before the sale took place under the Radcliff judgment. This question, we think, should be answered in the negative, for the reason that James Staples, the plaintiff below, was not a party to the writ of error which was sued out by the Bassick Mining Company to reverse the Schoolfield judgment, and for the further reason that both James Staples and George H. White had redeemed from the sale made under the Schoolfield judgment before that judgment was reversed, and before its validity was drawn in question by the judgment debtor. The redemption by George H. White, under the judgment by him held, took place on January 16, 1886, before a writ of error was sued out in the Schoolfield case. The redemption by James Staples took place on May 14, 1886, also before a writ of error had been sued out; but Staples, as it seems, was delayed for nearly a year, in making a sale in satisfaction of his judgment, by an injunction forbidding the sale, that was obtained in a suit brought by the Union Iron Works, which latter company was also a judgment creditor of the Bassick Mining Company. The last-mentioned injunction was dissolved about May 18, 1887, when the suit in which it was obtained (Union Iron Works v. Bassick Min. Co., 10 Colo. 24, 14 Pac. 54) was decided, and thereupon the sale took place as above stated, on June 21, 1887. We are unable to discover any reason why the reversal of the Schoolfield judgment, occurring, as it did, under the foregoing circumstances, had the effect of preventing a valid sale under the Radcliff judgment, or of invalidating the title which was acquired at that sale. The rights of the plaintiff below under the redemption laws of Colorado (Mills' Ann. St. Colo. §§ 2547–2549) had become established by the payment, on May 14, 1886, of the sum necessary to redeem from prior sales, and the subsequent reversal of the Schoolfield judgment, in a proceeding to which he was not a party, cannot be held to have altered his rights. After

he had redeemed from the prior sale, his position was very analogous to that of a purchaser at an execution sale under a voidable judgment; and it is well established that a purchaser's title at an execution sale, under a judgment which is simply erroneous, will not be affected by a subsequent reversal of the judgment, provided the purchaser was a stranger to the suit in which the judgment was rendered. Rector v. Fitzgerald, 19 U. S. App. 423, 427, 8 C. C. A. 277, and 59 Fed. 808; Gray v. Brignardello, 1 Wall. 627, 634; Voorhees v. Bank, 10 Pet. 449, 469; Gilman v. Hamilton, 16 Ill. 225, 232; Clarey v. Marshall's Heirs, 4 Dana, 96, 99. We think, therefore, that, notwithstanding the reversal of the Schoolfield judgment, on May 18, 1887, the plaintiff below, at the subsequent sale, acquired a good title to the mining claims now in controversy.

Some subsidiary questions were discussed on the argument of the case which will now be noticed. On the trial of the case, the plaintiff below introduced in evidence the sheriff's return to the order of sale contained in the Schoolfield judgment. Appended to the return was an affidavit of the publisher of a newspaper, termed the "Sierra Journal," which contained the statement that the notice of the sale under the Schoolfield judgment was published for four consecutive weeks in the Sierra Journal, "the first publication thereof being in the issue dated June 18, 1885, and the last publication thereof being in the issue dated July 19, 1885." As the judgment in the Schoolfield case was rendered on June 19, 1885, one day subsequent to the date of the first issue of the aforesaid paper, the plaintiff called a witness (John R. Smith), by whom it was shown that, although the first issue of the paper in which the notice of sale was published was dated June 18, 1885, said paper was not in fact issued and published until the day following,—that is to say, June 19, 1885,—and that the publication of the paper was withheld for one day, and until the judgment in the Schoolfield case had been rendered. One of the notices of said sale was also appended to the sheriff's return, which notice was dated June 19, 1885. The testimony of John R. Smith, above referred to, was objected to by the defendant below on the ground that it tended to impeach the record in the Schoolfield case. We think, however, that the testimony was properly admitted. It did not impeach any matter of record. It explained an apparent discrepancy between the date of the notice of sale which was appended to the return, and the date of the first issue of the paper in which the notice of sale was published. It showed that a newspaper, which upon its face bore date June 18, 1885, was not, in fact, issued or published until the succeeding day. Such testimony, we think, was clearly admissible, and did not contradict any fact which was recited by the record.

It is further contended that the trial court committed an error, prejudicial to the defendant, in ruling out certain depositions which were offered by the defendant below for the purpose of showing that James Staples was not the real party in interest, that the money expended by him to redeem the property in controversy from the sale under the Schoolfield judgment was advanced by Edmund C.

Bassick, that the money expended to make the purchase under the Radcliff judgment was also advanced by said Edmund C. Bassick, and that the latter person was the real owner of whatever title was acquired by virtue of such purchase. This assignment, we think, is without merit. The action being in ejectment, the plaintiff, James Staples, was the proper person to sue, although it was true, as the defendant contended and offered to show, that he merely held the legal title to the property sued for, and that the equitable ownership thereof was vested in Edmund C. Bassick. The holder of the legal title is always entitled to maintain a suit in ejectment. In such actions, the holder of the legal title is, in the eye of the law, the real party in interest. So far as appears, therefore, the testimony which was offered and excluded neither tended to impeach the plaintiff's legal title, nor to show that he was incapacitated to maintain the action.

Complaint is also made of the action of the trial court in excluding proof of adverse possession, which was offered by the defendant below, and in ruling out a tax title which the defendant offered to introduce. With reference to the first of these assignments, it is sufficient to say that the statute of limitations was not pleaded as a defense to the action; neither does it appear from the record that the testimony tending to show that the defendant had been in possession of the property for the statutory period was in fact excluded. The tax title, which was offered in evidence, appears to us to have been properly rejected, for the reason that, among other alleged defects in the proceedings by which such title was acquired, the notice of the tax sales contained no sufficient description of the property sold to render the sales valid.

An examination of the record has served to convince us that no material error was committed during the progress of the trial; the judgment of the circuit court is therefore affirmed.