# JUNIUS MULVEY

### *v.*

# DANIEL H. CARPENTER *et al.*

1. REDEMPTION—*title acquired by judgment creditor depends on validity of previous sale.* If a sale of land under execution is void by reason of the judgment or decree on which the execution issues being void, a redemption and sale by a judgment creditor will also be void, and no title will pass.

2. JURISDICTION—*to award execution on decree at a subsequent term.* Where a decree of foreclosure against two defendants, one of whom was brought into court by publication, provided that the master appointed to sell should report any deficiency after the sale, and that an execution issue against the defendants personally liable to pay the debt for such deficiency, and, about three years and a half after such report, the court ascertained the deficiency, and awarded an execution against one of the defendants, without any new notice of the intended action, under which land was sold: *Held,* that the court had no jurisdiction to make the supplemental order awarding the execution, and that the sale was a nullity.

3. Where a final decree is made, in a suit in chancery, confirming the master's sale of property, and the cause goes off the docket, and it is, at a succeeding term, reinstated, without notice to any adverse party whose interests are to be affected, all subsequent orders will be without authority of law, and void.

4. DECREE—*uncertainty.* Where a decree of foreclosure against two defendants, one of whom held the legal title to the property in trust for the other, provided that, on the coming in of the master's report of sale, an execution should issue on the decree for any deficiency not realized by the sale against " the defendants who are personally liable:" *Held,* that the order was indefinite and uncertain as to which was personally liable, but being joint against the " defendants," no execution could issue against one only of them.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This was a bill in chancery, filed by Daniel H. Carpenter and Amos F. Tompkins, against Junius Mulvey, to set aside a sale on execution of land, a redemption and re-sale on a second execution. The court below decreed the relief sought, but required of the complainants the amount paid by the defendant. The opinion of the court states the substance of the material facts.

Mr. JOHN BORDEN, for the appellant.

Messrs. BONNEY, FAY & GRIGGS, for the appellees.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

Whether titles, which, it is said, parties have acquired to the lands in controversy from Wiltberger, while the decree of foreclosure in the case of *Wiltberger* v. *Embree et al.* remained in force, and before it was reversed in this court, will prevail over titles previously acquired from Embree, the mortgagor, is a question that has no relation to the merits of the present controversy, and we shall not now discuss that branch of the case. So far as the mortgage claim was presented by the original bill, it was formally withdrawn on the hearing, it appearing that appellant's wife held that interest, whatever it was, and that he had no direct interest in it. That branch of the case having been dismissed, the remaining controversy is confined within narrow limits, and involves the consideration of but few questions, and the discussion of no principles of law, except such as are elementary.

The most important question, and indeed the only one which concerns, fundamentally, the validity of the title appellant claims to the lands, is, whether the execution issued on the judgment, or decree, in *Monroe* v. *Tompkins et al.* under which the property was originally sold at sheriff's sale, and from which it was redeemed by appellant, on an execution issued on a judgment in his favor, against Tompkins, was void, as having been issued under a judgment, or decree, rendered in a cause in which the court had no jurisdiction of the person of defendant Tompkins.

The judgment in favor of appellant, against Tompkins, was entirely regular, and the execution under which the redemption was effected was valid; but if it shall be determined the execution issued under the decree in *Monroe* v. *Tompkins et al.* was void for want of jurisdiction in the court to award it, the sale under it being void, it would follow the redemption based on it would also be void. The judgment creditor is bound to take notice whether the court

that pronounced the decree or judgment under which the sale was made, from which he is about to redeem, had jurisdiction in the cause.  It is a familiar principle, if the court had no jurisdiction, all proceedings under the decree or judgment would be a nullity, and a party redeeming from a sale in such a case could acquire no title to the land.  His redemption can give no validity to the previous sale, which was absolutely void for want of jurisdiction in the court.  *Johnson* v. *Baker*, 38 Ill. 98.

Whether the sale from which the redemption was made was void, is purely a question of law, and is unaffected by the equities arising between the parties.  What private contract Tompkins may have had with Monroe or Stewart, in regard to the mortgage indebtedness, whether he or Bell should be liable for the amount that should remain after the master's sale of the premises, is wholly immaterial in the decision of the case.  It is not shown appellant had any knowledge of the contract, if any existed, and if he had, we are not aware it would affect his rights in the premises.  It may be true, as charged, that the property was in fact sold to Bell, but, for his accommodation, the title was placed in Tompkins.  He gave his promissory notes for the purchase money, and executed the mortgage that was subsequently foreclosed by Monroe, for the benefit of Stewart and his creditors.  No matter what may have been the relations between Bell and Tompkins in regard to the property, the latter was legally bound for the purchase money, to the same extent he would have been had he made the purchase on his own account.

In the suit commenced by Monroe to foreclose the mortgage, Tompkins and Bell were both made defendants.  The former was alone personally served with process, and the latter was brought into court by publication, under the statute.  Bell was defaulted, but Tompkins filed an answer, prepared, perhaps, by Monroe, but in fact signed by other counsel, in which he substantially admitted all the allegations of the bill.

Accordingly, a decree was entered, finding the amount of the mortgage indebtedness, and directing a sale to be made of the mortgaged premises, if default should be made in payment of the amount found due, by a day fixed. It was recited in the decree that Tompkins was the agent of Bell in purchasing the property, and, by a private agreement made at the time between them, Tompkins was to hold the legal title to the property for the use and benefit of Bell. The decree provided that, if the moneys arising from the sale should be insufficient to pay the amount found to be due, with interest and costs, the master should specify the amount of such deficiency, in his report of the sale, and "on the coming in and confirmation of said report, the defendants who are personally liable for the payment of the debt secured by the said mortgage, pay to the complainant the amount of such deficiency, with interest thereon from the date of such last mentioned report, and that the complainant have execution therefor."

Having first given the requisite notice, the master, on the 27th day of May, 1865, sold the mortgaged premises, under the decree, as directed. On the 7th day of July, 1865, he filed his report of the sale, showing, after the appropriation of the proceeds of the sale according to the direction given in the decree, a deficiency of $1579.09.

On the 21st day of January, 1869, a further order was entered in the cause, reciting, among other things, the deficiency that remained after applying the proceeds of the sale of the mortgaged premises as reported by the master; that such deficiency then amounted to $1893, "and that complainant have execution against the said defendant Tompkins therefor." It was under the latter order the execution was issued on which the sale of Tompkins' property was made, from which appellant redeemed, and under which he acquired the title he now insists upon.

On the final hearing of this cause, the court decreed the sale and redemption were void, and set aside the sheriff's deed

to appellant for the premises, but imposed upon complainants, as conditions upon which the relief would be granted, that they should, within a time fixed, pay to appellant the balance due on the decree in *Monroe* v. *Tompkins and Bell,* with interest, and the amount of appellant's judgment at law against Tompkins. Appellees, although dissatisfied with the conditions imposed as to the relief granted, have assigned no cross-errors.

We now recur to the principal question first suggested, viz: whether the sale made under the execution issued on the decree in *Monroe* v. *Tompkins,* was without authority of law, and hence void.

It can not be maintained on the ground the original decree awarded execution against " the defendants who are personally liable for the payment of the debt secured by the mortgage," because the execution was not issued under that order, but under the order made January 21, 1869. The first order is indefinite and uncertain. Who was " personally liable for the payment of the debt secured by the mortgage," the court does not indicate by anything contained in the decree. Against whom, then, was the execution to issue? It was recited that Tompkins was the agent of Bell for the purchase of the property, and, by a private agreement made between them at the time, the title was merely placed in Tompkins for the use and benefit of Bell. What this may mean, is not very clear, but, if it means anything, it is certainly that the court intended to declare that Bell was the party who was personally liable for the payment of the debt. It is not an unreasonable inference, from this recital in the decree, that no execution was to be awarded against the property of Tompkins for any deficiency that might remain; but however this may be, that was a joint decree, and the execution was to issue for any deficiency against the " defendants." There were but two defendants. Bell had not been personally served with process, and no execution could rightfully be awarded against him. The decree made no provision for issuing any execu-

tion separately against the property of Tompkins for any deficiency that might remain unpaid after the sale of the mortgaged premises. It was this fact, no doubt, that gave rise to the making of the order of January 21, 1869, for a separate execution against the property of Tompkins.

By what authority did the court assume to make the supplemental order of January 21, 1869, awarding execution against Tompkins for the balance remaining due on the original decree? No notice was given to Tompkins that an application would be made to the court to award an execution against him. It may be he would have been able to show cause against it. It was essentially a new proceeding, and what was done was, in effect, a personal judgment against him, as at law, for a large amount of money, in a cause where he insists he was not liable personally for anything. Nor was it simply directing the issuing of an execution previously ordered " on the coming in and confirmation " of the master's report. The court found the deficiency to be $1893, and ordered that " complainant have execution therefor." Under the former decree, if any execution could issue at all against Tompkins, it could only be for $1579.09, with interest thereon from the date of the master's report.

It is indispensable to the validity of the last order, that the court, in some way, should have obtained jurisdiction of the person of defendant Tompkins. It did not have jurisdiction by any notice given to defendant, and hence there was a total want of jurisdiction, unless it can be maintained the cause had been continuously pending in court since the original decree in 1865, and that defendant was in court by virtue of the service of the original process, and his appearance in accordance therewith. This position can hardly be sustained. It will be borne in mind the original decree was rendered in 1865, the sale of the mortgaged premises took place in May thereafter, the master's report of the sale, showing a deficiency of $1579.09, was filed on the 7th of July, 1865, and on the 25th of September, 1868, the master's re-

port, by an order entered of record on that day, was by the court confirmed. This would seem to have been an end of the case, and, in the absence of anything appearing to the contrary, it will be presumed it passed from the docket. If so, the court manifestly lost all jurisdiction of the cause and the persons of the parties, and, unless it was placed back upon the docket, upon notice to the parties adversely interested, all further orders made in the cause would be without authority of law. There is no pretense Tompkins had any notice the cause was to be re-docketed, that execution might be awarded against him, or for any other purpose.

It is apparent that neither Monroe, nor Stewart, on whose behalf Monroe was foreclosing the mortgage, ever intended, when the original decree was rendered, to hold Tompkins liable for the payment of any deficiency after the sale of the mortgaged premises. Equitably, it was the debt of Bell, and all parties seem to have agreed he ought to be made pay it. The arrangement by which Tompkins permitted the title to the property to be vested in him, and assumed the legal liability to pay the purchase money, was entered into partly at the request of Stewart, and to oblige him as well as Bell. After the mortgage sale, neither Monroe nor Stewart gave the matter any further attention. The object was, to get the title to the property back into the hands of the original owner, and that was accomplished by the mortgage sale, and the deed made in pursuance thereof.

The matter rested until it was revived, in 1869, by appellant, who proposed, for a share, to collect the balance due on the decree, from Tompkins, or in some way make it out of his property. After some negotiations, his proposition was accepted by Monroe, and thereafter appellant assumed to manage the affair. Neither Monroe nor Stewart gave it any personal attention. It was found appellant could not obtain an execution, as at law, for the deficiency, without a further order of court. Accordingly, appellant had some papers prepared, which Monroe signed, which enabled him to procure

the making of the order of January 21, 1869, and, subsequently, appellant sued out an execution under it against Tompkins, on which he caused the property in controversy to be sold. At the sheriff's sale, the property was bid off by Latimer, who received the usual certificate that would, under the statute, entitle him to a deed, in case it was not redeemed. Subsequently, Latimer assigned the certificate of purchase, but to whom he does not recollect, and the evidence does not disclose. Circumstances proven would seem to warrant the inference the purchase by Latimer was in the interest of appellant, and that the assignment was afterwards made to him, but whether this is so, is not a matter of any great consequence.

Obviously, when the master's report of sale, and showing what deficiency remained, was confirmed by the order of court, made on the 25th of September, 1869, the cause passed from the docket. This would have been the ordinary course, and nothing to the contrary appears. It was reinstated at the instance of a stranger to the record, and without any notice to any adverse party whose interests were to be affected. Hence all subsequent orders in the cause were without authority of law, and therefore void.

It is doubtless true, as counsel contend, that no execution for the deficiency could properly issue until after the "coming in and confirmation" of the master's report; but no order had previously been made for an execution against Tompkins alone, and none was then made. Months elapsed before the court assumed to award execution against Tompkins. As we have seen, the court had then lost all jurisdiction of the cause or the persons of the parties. The sale under the execution awarded against Tompkins being void, there was nothing from which appellant could redeem. Hence it follows, as a deduction from the premises, the redemption being unauthorized by statute, appellant acquired no title to the property redeemed and re-sold on his execution.

Syllabus.

Upon the whole record, we are of opinion the decree of the court below is just and equitable, under the evidence, and is warranted by the law.

*Decree affirmed.*