UNION IRON WORKS v. BASSICK MINING COMPANY ET AL.

1. A purchaser at a sheriff's sale, as well as a party redeeming, is bound at his peril to inquire whether it sufficiently appears on the face of the record that the court had jurisdiction.
2. It is true that courts of equity interfere not only to remove, but to prevent, a cloud upon title, but it is a general rule that the enforcement of a legal right will not be enjoined in equity except upon a clear showing of a right superior to that which it is sought to enjoin.

3. The rule is that a sale of real estate under legal process will not be enjoined because of irregularities in the proceedings, or because the judgment upon which process issued was void, where no serious injury or embarrassment to title is shown as likely to result from allowing the sale to proceed.

*Appeal from District Court, Custer County.*

Complaint filed June 9, 1886, as follows:

"The plaintiff, complaining of the defendants, alleges:

"(1) That it is a body corporate organized and doing business under and by virtue of the laws of the state of California, and was such corporation at and during all of the times hereinafter mentioned.

"(2) That the defendant, the Bassick Mining Company, is a corporation organized under the laws of the state of New York, and authorized, by a compliance with the terms and conditions of the laws of the state of Colorado, to do business in said last-mentioned state.

"(3) That, at and before the times hereinafter mentioned, the said defendant company was indebted to the plaintiff in a large sum of money, to wit, the sum of sixteen thousand three hundred and eighty-five dollars ($16,385), with interest upon the same according to the terms of such indebtedness then existing, and, being so indebted, the plaintiff, on, to wit, the 16th day of June, 1885, began its action in the district court of the second judicial district of the state of Colorado, in and for the county Arapahoe, in attachment against the said defendant, the Bassick Mining Company, and upon the filing of its bond, as required by the statute in such case made and provided, a writ of attachment issued against the said defendant company out of and under the seal of said court.

"(4) That on, to wit, the 17th day of June, 1885, the summons in said cause was duly served upon said defendant company, by delivering a true copy thereof to its agent for that purpose appointed; and on, to wit, the

18th day of June, 1885, the said writ of attachment was served by levying upon the following described property, to wit [description of property].

" (5) That afterwards and on, to wit, the 15th day of August, 1885, the said defendant company having wholly failed to answer, and having permitted the said cause to go by default, judgment was duly entered against it in favor of this plaintiff for the sum of sixteen thousand seven hundred and ninety-five dollars and fifty-eight cents ($16,795.58) together with the costs of said case, amounting to twenty-seven dollars and forty-five cents ($27.45), and execution, both general and special, ordered against said defendant company and against the property attached.

" (6) That, before the rendition of said judgment, divers other attachments had been, at the instance of divers other creditors, sued out and levied upon the identical property so aforesaid attached by this plaintiff, a large number of which attachments were prior in date to the said attachment of this plaintiff, and some of which, having been brought in other courts and in vacation, were prior in time and senior to the attachment of said plaintiff; the first of said writs of attachment having been issued in behalf of the Hendrie & Bolthoff Manufacturing Company out of and under the seal of the said court, and levied upon the said identical property on, to wit, the 28th day of May, 1885, and in which said cause a judgment was entered against the said defendant company for the sum of seven thousand forty-two dollars and seventy-nine cents ($7,042.79), said judgment having been rendered on the 29th day of July, 1885; and divers other judgments against the said defendant company were entered at the suit of divers other creditors, both in said court and in the district court in and for the said county of Custer.

" (7) That execution having been issued in said cause of the said Hendrie & Bolthoff Manufacturing Company

upon the personal property attached and levied upon by this plaintiff, as well as by the said company, the same was sold under said execution as of a prior lien, and the proceeds thereof devoted to the payment *pro tanto* of said judgment, and in consequence thereof no execution has been or could be levied upon said property in this cause; leaving the real estate hereinbefore described alone to satisfy the judgment of this plaintiff, and such other judgments and claims and levies as have been obtained and acquired against the said premises.

"(8) That afterwards, and on the 12th day of January, 1886, an execution in said cause was issued to the sheriff of the said county of Custer for service, and returned as against the said property of the said defendant company, which had, as will hereafter more fully appear, been sold under certain other executions issued in certain other cases upon judgments therein obtained, by means whereof this plaintiff has failed to realize any part or portion whatsoever of the amount of its said judgment against the said defendant, the Bassick Mining Company, up to and including the day hereof.

"(9) The plaintiff further alleges that, on or about the 1st day of June, 1885, one William D. Schoolfield, who is made a party defendant to this suit, commenced a certain action in the district court in and for the county of Custer aforesaid, against the said defendant, the Bassick Mining Company, Fred McKeon, M. D. Swisher, M. M. St. Clair, Julia E. Hamlin, the Laflin & Rand Powder Company, Frazer & Chalmers, and the Hendrie & Bolthoff Manufacturing Company, to enforce a lien upon and against the property hereinbefore mentioned as having been attached at the instance of this plaintiff, together with all and singular the improvements thereon; that afterwards, and about the 19th day of June, 1885, the said action was dismissed as to the said Hendrie & Bolthoff Manufacturing Company, Fred McKeon, M. D. Swisher, William

Houze, M. M. St. Clair, Julia E. Hamlin, the Laflin & Rand Powder Company and Frazer & Chalmers.

"(10) That in said action, brought by the said Schoolfield, H. T. Holthoff, John H. Templeman and John Jordi intervened as lien claimants against the said defendant, the Bassick Mining Company, and against the said property hereinabove described.

"(11) That on or about the 11th day of June, 1885, one Thomas Armstrong was, by order of said court duly made, allowed to intervene in said action, and did so intervene, and filed his petition, claiming a miner's lien upon the said Maine lode only, and upon such buildings and permanent improvements and appurtenances as belonged thereto for and on account of work done and performed in and about said Maine lode within the months of March, April, May and June of said years, by himself and certain persons who had assigned their respective claims and liens therefor to him for purposes of enforcement, amounting to the sum of twenty-one thousand eight hundred and forty-seven dollars and eighty-five cents ($21,847.85).

"(12) That said petition of said Armstrong, among other things, set forth and alleged that the above said work and labor was done and performed by said persons in the working and development of said Maine lode, and the said Armstrong in no wise or manner whatsoever claimed, or attempted to claim or demand, a lien on any of the other of the said premises of the said defendant company.

"(13) And afterwards, and on the 19th day of June, 1885, in said action so brought by the said Schoolfield, the said court entered its decree, which said decree, after reciting that the cause coming on to be heard upon the complaint, the answer and the cross-bill of the defendant B. C. Adams, the intervening petition of H. C. Holthoff, John H. Templeman, Thomas Armstrong and John

Jordi, and the default of the Bassick Mining Company to answer, and the report of the referees theretofore appointed, orders that said plaintiff, Schoolfield, have a lien and judgment upon the property of the said company, described in his complaint, for six thousand ninety-three dollars and nine cents ($6,093.09), and costs; that said defendant, B. C. Adams, have a lien and judgment upon the property of the said defendant, Bassick Mining Company, as asked for in his said complaint, for two thousand three hundred and twenty-one dollars and fifty cents ($2,321.50), and costs; that the intervening petitioner John Jordi have a lien and judgment upon the property of said company, as asked for in his said petition, for two hundred and sixty-two dollars and fifty cents ($262.50), and costs; that the intervening petitioner Thomas Armstrong have and recover of and from the said defendant company the sum of twenty-one thousand two hundred and twenty-five dollars and ninety cents ($21,225.90), and that he have a lien upon the property of the said defendant, the Bassick Mining Company, therefor, as asked for in his said intervening petition, and his costs to be taxed; that the intervening petitioner Templeman have a lien and judgment upon the property of the said mining company, as asked for in his petition, for seven hundred and ninety-seven dollars and fifty cents ($797.50); that the intervening petitioner Holthoff have a lien and judgment upon the property of the said defendant company, as asked for in his said intervening petition, for four thousand two hundred and twenty-one dollars and twenty-six cents ($4,221,26), as asked for in his said petition. The said decree further orders that all property mentioned or described in the petition of said Schoolfield, being the said property so as aforesaid attached by this plaintiff, be sold by the sheriff of the said Custer county, on the terms and conditions as a sheriff is directed by the law to sell real estate on execution; and after having given notice as required by law for the sale

of real estate on execution for cash in hand to the highest and best bidder, selling said property in separate parcels or altogether, as would bring the most money; that the said sheriff was thereupon then ordered to appropriate the proceeds of said sale — *First*, to the payment of the costs of said suit, and of the receiver who had been appointed thereunder; *second*, to the payment *pro rata* of all and singular the several liens and judgments therein decreed, and, in case the said judgments should not be satisfied in full, then that all parties, claimants thereunder, should have execution for the balance remaining unpaid.

" (14) That the said defendant company in said decree was not given any time whatsoever for the payment of the said decree, or any part thereof, prior to the issuance of execution thereunder, and that it was provided that such executions should issue at once and without delay.

" (15) Plaintiff further alleges, upon information and belief, and so charges the fact to be, that the said property of the said defendant company, mentioned in said decree, was and is of great value, to wit, of the value of not less than one hundred and fifty thousand dollars ($150,000), and that the said Maine lode is the main or principal lode of the said defendant company, the other lodes, however, being also of great value; that the mill of the said defendant company, which plaintiff is informed and believes is of a value of not less than twenty-five thousand dollars ($25,000), is not upon said Maine lode at all, but upon one of the other properties mentioned in said decree.

" (16) Plaintiff further alleges, upon information and belief, that the said parties to the said action at the time the said action was brought by the said Schoolfield, and in whose favor the several liens were allowed, were in collusion with each other, and caused the published notice of the sale under said decree to be commenced on the 18th day of June, 1885, one day before the said decree

was signed by the said court; that said notice was given in the Rosita Index, a paper published in Rosita, in said Custer county, which said paper is a weekly paper, and the issue thereof for said week in which said notice first appeared was published on Thursday, the 18th day of June, 1885; that said paper is published and issued on Thursday of each week; that the first issue thereof made after the signing of said decree was made on Thursday, the 25th day of June, 1885; that the sale of the property under said decree of said court was made by the sheriff of said county on the 11th day of July, 1885, sixteen days after the said 25th day of June, 1885, which said June 25 was the first possible date that public notice thereof, under said decree, could have been given through said paper, and that no other notice of sale than the said notice in said paper, commenced on June 18, 1885, was given of said sale of said premises under said decree.

"(17) That afterwards, and on the 11th day of July, 1885, pursuant to the said notice so as aforesaid given, the said sheriff sold said premises described in said decree, being the identical property hereinbefore described, to satisfy said liens and judgments in said decree mentioned; that said property was not sold separately, but, on the contrary, all of said property was sold *en masse*, and the same realized at the said sale, above expenses, the sum of thirty-eight thousand dollars ($38,000), or thereabouts.

"(18) That the said premises were sold as aforesaid, as well upon the decree in behalf of said Armstrong as upon the decree in behalf of the other lien claimants, and all of said property was sold as much under the said decree of the said Armstrong as of the other said lien claimants, notwithstanding that the said Armstrong claimed no lien whatsoever upon any of said premises save and excepting the said Maine lode mining claim. And the plaintiff avers that by reason of the said advertisement and manner of said sale, and by reason of the making of the de-

cree as aforesaid, the plaintiff has been advised that the said sale is probably null, and, if so, that no rights can be acquired by redemption creditors thereunder.

"(19) Plaintiff further alleges that the sale has at no time been affirmed by the said court, or the judge thereof, and that on or about the 11th day of January, 1886, the time for the redemption of said premises from said sale by the said defendant company expired and ceased by limitation.

"(20) That on or about the 12th day of January, 1886, the said Hendrie & Bolthoff Manufacturing Company caused to be issued out of the said district court of Arapahoe county an execution in due form, directed to the sheriff of Custer county, for service and return, and accompanied the same with funds to redeem the said premises under the said sale made in virtue of said decree; but having been advised that by reason of the said irregularity of said decree, and the sale thereunder, the same was not by the said Hendrie & Bolthoff Manufacturing Company redeemed.

"(21) The plaintiff, further complaining, alleges that the said defendant Bassick is one of the directors of the said defendant company, and that he, together with the defendants White, Staples and others, as plaintiff is informed and believes, has entered into a combination and conspiracy with themselves to have the property in said decree mentioned realize as small a sum as possible, that they might buy in the same for their own use and benefit, and thereby deprive, defeat, cheat, swindle and defraud the creditors of said defendant company out of their just debts and demands; that said White, as the assignee of a judgment of one A. Vorreiter against the said Bassick Mining Company in the district court in and for said Custer county, for the sum of three thousand one hundred and fifty-two dollars and fifty-seven cents ($3,152.57) debt, and the further sum of twenty-two dollars and sixty cents costs, with interest thereon from the

date of the said judgment, on which said judgment is a credit of three hundred and sixty-one dollars and eighty-three cents ($361.83), subsequent to the expiration of six months' time of redemption given said company from said sale, and during the month of January, 1886, sued out an execution on said judgment last aforesaid, and placed the same in the hands of the sheriff of said Custer county to execute; that said sheriff, the defendant Hunter, did indorse on the back of the said execution, issued on said judgment of said Vorreiter, a levy upon said property in said decree described; whereupon the said White paid the said sheriff the sum of $39,523.15, being the amount of money and costs as realized on said sale of July 11, 1885, with accrued interest, to redeem the same in said decree mentioned in said action brought by said Schoolfield, W. Armstrong, and others as intervenors.

"(22) That said defendant Hunter, sheriff of said county, under and by virtue of said redemption of said White, did advertise the said property in said decree mentioned for sale to the highest and best bidder for cash on the 10th day of March, 1886; whereupon the said Hendrie & Bolthoff Manufacturing Company did file its certain complaint in said cause, upon which a writ of injunction issued, commanding the said defendant wholly to desist and refrain from making sale thereunder until the further order of the court in the premises; whereupon the said Hunter did, instead of returning the execution in his hands as by law he was required to do, with the causes of his failure to sell indorsed thereon, advertised that he would adjourn said sale to the 24th day of March, 1886, between the hours of 10 o'clock A. M. and the setting of the sun on that day. That on said day, the said injunction being still depending undetermined, the said Hunter did further postpone said sale by advertisement until the 14th day of April, 1886, and afterwards, and on the 14th day of April, 1886, the said injunction being still against the said sale, postponed the

said sale until the 6th day of May, 1886, at the hour and place specified; and afterwards, and on, to wit, the 6th day of May, 1886, advertised that he would postpone the said sale until the 13th day of May, 1886, when the same would take place at the hour and place therein specified; the last said postponement having been advertised but for the period of seven (7) days in the said Rosita Index (being but one issue of the said paper), and said advertisement having appeared only on the day of said sale, as plaintiff is informed and verily believes, which, as aforesaid, is a paper published weekly in said county and state, and a copy of which said advertisement is in words and figures following: [Here follows advertisement of sale and postponements.]·

"(23) Plaintiff further alleges that the said writ of injunction having been dissolved by order of the judge of said court on, to wit, the 10th day of May, 1886, prior to the said sale, the said defendant Hunter did proceed to make sale under and by virtue of the said advertisement and judgment and executions aforesaid, and that other creditors did then and there offer and bid the sum of $50,000 upon and for said premises, whereupon the defendant Staples, in pursuance of the said conspiracy, collusion and intention to cheat and defraud, as hereinbefore stated, did bid the sum of $60,016.67 upon said premises; he, the said Staples, claiming by virtue of said bid to be the assignee of a judgment of Radcliff Brothers against said Bassick Mining Company upon a judgment obtained by them against the said company for the sum of $678.70, said judgment having been obtained in the district court in and for the said county of Custer.

"(24) That immediately after the said sum of money was by the said Staples so as aforesaid bid at said sale, the said defendant sheriff, by virtue of an execution issued out of the district court of the third judicial district within and for said county in favor of said defendant Staples, as assignee of the said Radcliff Brothers, plaint-

iff, against the said Bassick Company, wherein and whereby he was commanded to make the said sum of $678.70, did advertise in the said Rosita Index that he would offer and expose for sale on the 10th day of June, 1886, the said premises hereinabove described, for the purposes of making the said sum of $678.70, and the further sum of $60,016.70, being the said sum paid by the said Staples as aforesaid, together with interest on said sums as provided by law, said sale to take place at the front door of the court-house in said town of Rosita between the hours of 10 o'clock A. M. and the setting of the sun on the same day, and which said publication is in words and figures as follows [notice of sale].

"(25) The plaintiff further alleges that after the said sale of the 11th day of July, 1885, and after the said sale of the 13th day of May, 1886, as it is informed and believes, the said defendant, the Bassick Mining Company, sued out its certain writ of error from the supreme court in and for the said state, directed to the said district court of Custer county in the said cause, entitled 'W. D. Schoolfield et al., with the said Armstrong as intervenor, against the said Bassick Mining Company,' and did cause a transcript of the said record to be lodged in the clerk's office of the said supreme court; and that afterwards, and to wit, on the 17th day of May, 1886, the said supreme court, having fully examined the record and assignment of errors therein, did grant a supersedeas as to the decree and judgment rendered in said cause upon the filing of a bond in the sum of $70,000, which said bond has been duly signed, executed, approved and filed, and the said supersedeas granted.

"(26) That in and by the said writ of supersedeas all proceedings under the said judgment obtained in the said case of Schoolfield have been suspended by reason of the said action of the said supreme court, and the said cause is now pending in the said court on said writ of error, subject to the review of said tribunal.

"(27) The plaintiff, further complaining, alleges that it is a non-resident corporation, and that the various matters and things hereinabove set forth have only come to its knowledge within, to wit, the last twenty days, and that the facts connected with the said sale, the granting of the *supersedeas*, and the character of the said decree, and the sale thereunder in the said cause of Schoolfield, were not brought to its attention and knowledge until within, to wit, the last two or three days.

"(28) This plaintiff, further complaining, alleges that it stands ready and willing and is anxious to purchase said property at the said sale, to take place on, to wit, the 10th day of June, 1886, and that the said sum of $62,000, or thereabouts, it has raised and collected for the purpose of making redemption therefrom, in order that it may realize the amount of its said judgment against the said defendant company, and that the said judgment cannot be realized by it against the said defendant company save by and through its purchase of the said property under the statutes of the state of Colorado as a judgment creditor; that it has no desire to obtain the said property for its own use or purposes, and that the same, according to its best knowledge, information and belief, is amply sufficient to pay all the judgments and claims of creditors against it, provided the same can be applied to that purpose.

" (29) The plaintiff, further complaining, alleges that it is advised that, inasmuch as the said supreme court has granted a *supersedeas* upon said judgment and decree in the said Schoolfield case, and inasmuch as the said judgment may be wholly reversed and declared void, for naught held, and inasmuch as the said property was originally sold pursuant to said insufficient advertisement, and *en masse* instead of separately, and inasmuch as said sale was not confirmed, and inasmuch as the said sale made on the 13th day of May, 1886, on said Vorreiter judgment, was made as aforesaid upon an advertise-

ment and notice of seven days only, it cannot pay the said sum of more than $60,000 with complete safety to itself; but that should the said judgment be set aside, or should said Schoolfield sale be held to be irregular and of no effect, the said sum of $60,000 so as aforesaid required to be paid might be forever lost to this plaintiff, to its great, irreparable and utter damage and ruin; and that, on the other hand, should the said sale be ratified and confirmed, and the said judgment under which the same was made be held to be valid, then in the event this plaintiff fails to pay the said sum of money, and cause said property to be then sold upon its own execution, it will forever lose its said judgment of sixteen thousand seven hundred and odd dollars, with interest thereon, to its great damage.

" (30) The plaintiff, further complaining, alleges that inasmuch as the said sale so as aforesaid advertised and published for the 10th day of June, 1886, is a sale to be made under the said execution issued on the said judgment of Radcliff Brothers, the said defendant Hunter declines to pay any attention to the *supersedeas* issued in the said Schoolfield case by the said supreme court, but has notified the plaintiff that he is advised that it is his duty, and that in consequence he will proceed, to make said sale under said execution of Radcliff Brothers in behalf of said Staples at the time and place therein mentioned, and that, in the event the sale does not realize from outside bidders any amount greater than the sum for which it is to be held, he will make a deed of conveyance to the said Staples for said premises.

" (31) That if the said property is not redeemed, and the said deed is made, it is the object and intention of the said Staples, White, Bassick and other co-conspira-tors to secure to themselves the said property, and to work and develop the same for their own private ends, so that all other creditors of the said defendant company, including this plaintiff, will be deprived forever there-

after of any lien against the same, or of the possibility of recovering any part or portion of their said judgment.

"(32) The plaintiff further alleges that its lien of attachment did take effect upon said premises by virtue of the levy hereinabove mentioned, and that its execution has issued within the time required by law, and that the same is ready to be delivered into the hands of the sheriff for the purpose of purchasing said premises and re-advertising the same, but that the plaintiff cannot pay the said amount of money, in view of all the facts and circumstances hereinabove narrated, without grave risk of incurring the entire loss thereof; but that, if the said premises could be again offered for sale, it would enable other creditors to come in subsequently so soon as they could be assured of the validity of the said Schoolfield decree and sale thereunder, as redemption creditors, or to make original sale of said property if the invalidity of said sale and decree should be established, by means whereof all and singular the debts of the said defendant company owing to them could be realized out of said property; and that, until the question of the validity or invalidity of said decree and sale thereunder is properly established, neither of the said defendants should be permitted to make sale of said premises, either under the executions now in the hands of the sheriff, or any executions whatever.

"(33) Plaintiff further alleges that besides its own claim there are judgment liens upon said premises, as it is informed and believes, amounting, to wit, to the sum of about $75,000, which said sums have been wholly unsatisfied and will remain wholly unsatisfied, provided the said sale should take place on the 10th day of June aforesaid, and a deed should be made therefor, and the said Schoolfield decree should be affirmed.

"(34) Plaintiff further alleges that the said defendant, the Bassick Mining Company, is wholly and absolutely insolvent; and, beyond the said property and premises

hereinabove mentioned as about to be sold, it has no available means or assets out of or by means of which the plaintiff's said claim can be realized.

" (35) That this plaintiff is wholly without remedy save in a court of equity; and, inasmuch as it stands ready and willing to pay off all of the said sum of money mentioned in the said advertisement of sale, so soon as it can do so with safety, in order that it may realize the amount of its own legitimate claim, it respectfully prays this court that a writ of injunction issue out of and under the seal thereof, directed to the coroner of said county for service and return, and commanding the defendants, and each and all of them, wholly to desist and refrain from advertising or making sale of said premises hereinabove described, or any part or portion thereof, under the said execution issued on the said judgment of Radcliff Brothers against the said Bassick Mining Company, or under any other execution whatsoever, until the further order of this court; and that until the said decree in the said case of Schoolfield against the Bassick Mining Company be either affirmed or reversed, the said injunction order remain in full force and effect; and that, in the event the same should be reversed, the said decree of injunction be made perpetual, and that this plaintiff have such other and further relief as to equity and good conscience shall seem meet."

On this bill of complaint a temporary injunction was issued in the court below. Subsequently this injunction was dissolved, and a decree entered dismissing the bill. From this decree the complainant appealed to the supreme court, and upon his application a temporary restraining order was issued. Further facts in the case sufficiently appear in the opinion.

Messrs. L. S. DIXON and R. D. THOMPSON, for appellant.

Messrs. HUGH BUTLER and T. D. W. YONLEY, for appellees.

ELBERT, J.    The case of *Schoolfield et al. v. The Bassick Mining Company*, now pending on error in this court, was a proceeding under the mechanic's lien law, to enforce sundry liens against the property of the defendant therein. The decree was rendered in that case by the court below in favor of the several lien claimants, and a sale of the defendant company's mining property, consisting of seven or more lodes, with improvements thereon, was had under the decree. It is claimed that this decree and sale are void for reasons which will be hereafter stated. The contention here is between judgment creditors of the Bassick Mining Company, to wit, White, Staples and the Union Iron Works, the complainant herein. Each of these judgment creditors had a right, under the statute, to redeem the property sold under the decree in the Schoolfield case. White redeemed and sold the property under an execution issued on his judgment. Staples, in turn, redeemed the property, and advertised it for sale under the execution issued on his judgment. The Union Iron Works, the complainant, instead of redeeming, filed its bill in the district court of Custer county, asking that the defendant Staples be enjoined from selling the property under his execution. On this bill a temporary injunction was issued by the court below. Subsequently this injunction was dissolved, and a decree entered dismissing the bill. This is the case before us on appeal.

The leading facts as disclosed by the bill, and those upon which the equities of the complaint chiefly rest, are as follows: One Armstrong was one of several lien claimants in the Schoolfield case, and claimed and was decreed a lien on the Maine lode belonging to the defendant, the Bassick Mining Company. The other claimants in that suit claimed and were decreed liens, not only on the Maine lode, but on several other lodes, property likewise belonging to the defendant, the Bassick Mining Company. The court, notwithstanding the fact that the Armstrong

lien was decreed on the Maine lode alone, ordered and directed generally a sale of all the property to satisfy all the liens. All of the property affected by the different liens was subsequently sold under this decree *en masse.*

It is contended by counsel for complainant that this order of sale was void, and that the sale thereunder to satisfy the liens was also void. The sale was made July 11, 1885, but the complaint does not disclose who was the purchaser. This, however, is unimportant. If the sale was void, as claimed, he took no title to the property sold; that is to say, notwithstanding the sale, the title of the property remained in the judgment debtor, the Bassick Mining Company.

In January, 1886, the defendant White, as a judgment creditor of the Bassick Mining Company, caused an execution to be levied on the property in controversy, and paid the sheriff the sum of about $39,000, that sum being the amount necessary to redeem from the sale under the Schoolfield decree. The sheriff then proceeded and advertised the sale of the property under the White execution. This sale was made May 13, 1886. Upon the proposition that the order of sale in, and the sale itself under, the Schoolfield decree was void, it is claimed that this redemption and sale by White are also void. Freem. Ex'ns, § 321; *Mulvey v. Carpenter,* 78 Ill. 580; *Johnson v. Baker,* 38 Ill. 98; *Keeling v. Heard,* 3 Head, 592.

The sale under the White execution was on the 13th of May, 1886. At this sale the defendant White was the highest bidder and purchaser. The allegation in the complaint that Staples was the purchaser at this sale is admittedly a mistake. Thereafter, as the owner of a judgment against the Bassick Mining Company, the defendant Staples caused an execution to be levied on the property, paid to the sheriff the sum of $60,016 redemption money, and advertised the property for sale on the 10th day of June, 1886. It is this sale that the court below was asked to enjoin. It is claimed, for the reasons

given, that the redemption by the defendant Staples was void, and that the sale under his execution, if allowed to proceed, will likewise be void. Other questions are made respecting the regularity of the proceedings under both the White and the Staples execution, but we do not deem it necessary to notice them. Under the allegations of the bill the case of the defendants stands thus: The decree in the Schoolfield case, and the sale thereunder, the redemption by White, and the sale under his execution, were all void. The redemption by the defendant Staples was also void, and his sale, if allowed to proceed, will be of like character. The *status* of the complainant is this: On the 18th day of June, 1885, it levied its writ of attachment on the property in controversy. On the 15th day of August, 1885, it obtained judgment against the Bassick Mining Company for the sum of $16,795.58. On the 12th day of January, 1886, it caused an execution to be issued, and afterwards, on the 9th day of June, 1886, it filed the bill we are considering.

The only question presented is, Did the court below err in dissolving the injunction and dismissing the bill?

The power of courts of equity to restrain proceedings at law is well established. The jealousy, however, with which the jurisdiction has always been regarded, has restricted it to somewhat narrow limits. Fraud, mistake, and surprise in obtaining judgments are the most common grounds on which the jurisdiction is invoked. In this case it is to be observed the grounds of complaint do not arise out of the judgment sought to be restrained, but out of matter extrinsic the judgment. The judgment of the defendant Staples is unassailed. We are asked by the complainant to enjoin the sale under it until the Schoolfield case shall be decided by the appellate court. Two principal grounds are assigned:

1. That the complainant cannot redeem on its judgment under the statute, except at the peril of losing the redemption money paid should the decree in the School-

field case be hereafter declared void by the appellate court. This is an embarrassment which arises out of the alleged void or voidable character of the Schoolfield decree, and is in nowise chargeable to the defendant Staples or his judgment. As a judgment creditor, the same risk confronted him, and he chose to take it. The complainant asks that he may be restrained until it, the complainant, may be advised by the decision of the appellate court whether or not it may safely proceed to exercise its statutory right of redemption. Whatever hardship may exist is the result of a rule of law, namely, that a purchaser at a sheriff's sale, as well as a party redeeming, is bound at his peril to inquire whether it sufficiently appears on the face of the record that the court had jurisdiction. Freem. Judgm. § 509. We do not understand that the hardship this rule of law is liable to entail is a ground for equitable relief, nor are we cited to any authority that so holds.

It is claimed, however, by the complainant:

2. That the sale under the Staples execution, if allowed to proceed, will be void, and will cast a cloud upon the title of the property to which the complainant is looking to satisfy its judgment. It is true, courts of equity interfere, not only to remove, but to prevent a cloud upon a title. High, Inj. § 147. The cases, however, illustrative of the jurisdiction, proceed upon much clearer rights and equities than any presented by the bill under consideration. A number of recognized rules interpose between the complainant and the relief it asks. "It is a general rule that the enforcement of a legal right will not be enjoined in equity except upon a clear showing of a right superior to that which it is sought to enjoin." High, Inj. § 152. The complainant and the defendant are both judgment creditors, and stand *in pari statu.* There is no superior right upon the part of the complainant. Each is at liberty, under the statute, for the purpose of satisfying his judgment, to issue an execution

and levy it upon any property or upon any interest, either legal or equitable, in any property belonging to the judgment debtor.   The defendant Staples, in his levy and sale, is proceeding under the statute, not in any wanton or inequitable disregard of the rights of the complainant, but in the method prescribed by the statute, seeking satisfaction of his judgment.   In this connection it is to be remembered equity will not interpose and enjoin an execution creditor, where by so doing it will destroy or imperil his rights, and prevent him from obtaining that satisfaction of his judgment to which he is both legally and equitably entitled.   Freem. Ex'ns, § 440.   It is true that questions may arise as to the regularity of proceedings under the execution, and the soundness of the defendant's title, should the proposed sale proceed; but this is matter of dispute.

It is contended upon the part of counsel for defendants that the Schoolfield decree, and the proceedings thereunder, as well as the proceedings under the White and Staples execution, are not void; that, if irregular, they are voidable only.   The different legal results, as respects the rights of purchasers and judgment creditors redeeming, flowing from these two different positions of the contending parties, are well understood and need not be stated.   Freem. Ex'ns, §§ 339–345.   If the position of defendant's counsel be correct, then, instead of clouding the title, the sale of the defendant Staples will pass the title.

The question is presented, should the court below have gone into the questions raised touching the void or voidable character of the Schoolfield decree, and of the proceedings thereunder, especially while it was pending on error in the appellate court, and likewise into the questions raised touching the void or voidable character of the proceedings under the White and Staples executions? We are not prepared to admit, nor do we know of any authority for the broad proposition, "that the complain-

ant has a right in equity to have the regularity of former sales determined in advance of its redemption." In such matters it is for judgment creditors to proceed as they shall be advised. We do not understand it to be the practice of courts of equity, upon a bill of this nature, to pass upon a question of title in advance of its acquisition by either the defendant or complainant. The rule is that, "in general, questions of title being properly triable at law, equity will not interfere to restrain a sale of real estate under execution, the title to which is in dispute; but will leave the parties to pursue their remedy in a legal form." High, Inj. § 152. So, too, it is to be observed that had the court gone into the questions raised, and held the several sales void, an injunction would not have issued as of course. The rule is that a sale of real estate under legal process will not be enjoined because of irregularities in the proceedings, or because the judgment on which process issued was "void, where no serious injury or embarrassment to title is shown as likely to result from allowing the sale to proceed." High, Inj. § 248. It may well be doubted whether the injury suggested by the complainant in this case, viz., "the depreciation of the value of the property by reason of the cloud cast by a void sale," is not too remote and speculative to justify the restraint of the defendant in the exercise of his statutory rights, even if the other objections which we have given to the exercise of equity jurisdiction did not obtain.

For the foregoing reasons, we are of the opinion that the complainant does not show any such equity as entitles him to the relief prayed, and that the court below did not err in refusing to entertain the bill. The temporary restraining order heretofore issued must be dissolved, and the judgment of the court below affirmed.

*Affirmed.*